## DOMENICO PERROTTI *vs.* CHARLES J. BENNETT, STATE HIGHWAY COMMISSIONER.

Third Judicial District, New Haven, January Term, 1920.

PRENTICE, C. J., WHEELER, BEACH, GAGER and CASE, Js.

A finding is to be read as a whole and in connection with the memorandum of decision, if that be made part of the finding.

In the present case the trial court found that a tile drain in the highway, which gave way under the weight of the plaintiff's motor-truck and caused the injuries complained of, "was properly constructed and was of proper material." *Held* that had this statement stood alone, it would have been at variance with the evidence; but that, interpreted by its context and the memorandum of decision, all that it meant was that the earthen drain was built of proper material and properly constructed for that kind of a drain; and that the accident occurred either because the drain was not sufficiently covered and protected, or because iron pipe had not been used instead of earthen tile, or perhaps for both reasons.

It is immaterial whether conclusions of law, or of mixed law and fact, remain in the finding or not, if they necessarily have to be decided in passing upon the principal questions of law involved in the case.

Our rules (Practice Book, p. 268, § 10) require the ground or basis for each exception to the finding to be stated therein.

It cannot be said that the driver of a motor-truck, in turning off the paved portion of a roadway for about three feet while passing a trolley-car, is negligent as matter of law; nor under the circumstances of this case, could such a conclusion have reasonably been reached as one of fact.

Neither the State nor a municipality is obliged to keep the entire width of a country road open to and reasonably safe for public travel, if that portion which is maintained is sufficient for the public needs.

Although a municipality is not liable for fault or error in a plan adopted by it for a public improvement, it cannot escape liability for injuries to person or property caused by its maintenance of a defective highway, whether the defect inhered in the original plan of highway construction or not. Damages are awarded in such cases not for the error of judgment, however gross, but for the continued operation and maintenance by the municipality of the defective highway or other public improvement, after it has had reasonable notice of the defect.

The tile drain which gave way and caused the plaintiff's injuries—

constituting the defect in the present case—was but twelve inches below the surface and was covered only with sand and gravel. It was laid by the town of Hamden about eighteen inches from and parallel with the edge of the improved pavement, and in accordance with the plan of construction adopted by the State for improving the road, which formed part of its trunk-line system. *Held* that the highway commissioner thus had ample notice of the existence of the drain and of its character and the covering above it.

Under our trunk-line statute (General Statutes, Chapter 76) the State now holds the same position with respect to these particular highways that the respective municipalities formerly occupied,— with the same liability and the same limitations.

Argued January 22d—decided April 17th, 1920.

ACTION to recover damages for injuries to the plaintiff's automobile-truck and its contents, alleged to have been caused by the negligence of the defendant in the construction and maintenance of the highway, brought to and tried by the Superior Court in New Haven County, *Keeler, J.;* facts found and judgment rendered for the defendant, from which the plaintiff appealed. *Error and new trial ordered.*

The highway in Hamden known as the New Haven-Cheshire road, on September 10th, 1917, had about 35 feet of it permanently paved; near the middle of which were located double tracks of the Connecticut Company, the paved portion of the highway west of the westerly track being about 8½ feet wide, while west of this was an unpaved portion about 3 feet wide, slightly sloping toward the gutter, but substantially on a level with the paved portion.

In 1912, when this highway was improved, the town of Hamden laid a drain in the westerly side of this highway, parallel with and about 1½ feet westerly of the westerly edge of this pavement, in accordance with the plan adopted for the construction used in improving this highway. At the place of the accident the drain was located about 12 inches below the sur-

face, and was covered with sand and gravel. The drain was properly constructed and was of proper material, being a double-strength one-foot tile pipe.

This highway at the place of accident had been, in 1913, permanently paved by the State Highway Commissioner, and at the time of the accident was a part of the State trunk-line system, so-called, and was under the direction and control of the highway commissioner, and during this period was properly maintained and kept in proper repair.

On this day the plaintiff was driving upon this highway his heavily loaded motor-truck, the body of which was about 8 feet wide and overhung the chassis considerably on each side. The drain was not properly protected upon its upper surface from damage by heavy superimposed weight. The plaintiff, to avoid an approaching trolley-car, drove to the right or westerly side of the highway, and because of the unusual width of his truck he drove onto the unpaved portion of this highway. Owing to the weight of the truck and its load, his right wheels began to sink into the soil, and on reaching the place where the drain was laid they crushed through the drain and caused the injuries for which he sues.

The trial court found that "there was no negligence or default of the highway commissioner or any of his employees in failing to properly maintain said highway or to keep it in proper repair. The highway commissioner, his servants and agents, knew the manner of the construction of the highway and the materials used in the construction of the drain pipes at the place in question, and maps, plans and specifications showing same were in the possession of the highway commissioner, his agents and servants, on or before the time of the accident. The damage to the plaintiff was not the result of neglect by the highway com-

missioner to properly maintain or repair said drain or said highway, but it was due to a defect in the original plan of construction of said drain, which did not provide for additional covering or protection of the tile where it came so close to the surface as the place in question, so that it could withstand the weight of the plaintiff's truck and its heavy load. The plaintiff at the time of the injury to his truck was in the exercise of due care, and not in any way negligent."

The memorandum of decision is made a part of the finding, and states the cause of the accident as follows: "There was evidently a defect in the highway at the point in question, caused by the fact that either the tile drain pipe was not covered and protected otherwise than by the layer of gravel which was between it and the surface, or that iron pipe was not used instead of earthen pipe, or perhaps for both reasons."

*Charles T. McClure* and *George W. Crawford*, for the appellant (plaintiff).

*Charles Kleiner* and *William B. Turley*, with whom, on the brief, was *Frank E. Healy*, Attorney-General, for the appellee (defendant).

WHEELER, J. Three exceptions to the finding are pursued upon the appeal. Paragraph 9 recites that the "drain was properly constructed and was of proper material." This, the plaintiff urges, conflicts with the evidence, and is contradicted by another part of this paragraph of the finding as well as by the memorandum of decision. As the plaintiff had a right to operate a truck the combined weight of which, with that of the load, did not exceed 25,000 pounds, he was within the law. The plaintiff justly says, that "proper construction " and "proper material in this case would

mean a drain that would support a legal weight." If this finding stood alone, it must be held to be at variance with the evidence. The finding is to be read as a whole, and since the memorandum of decision is expressly made a part of the finding, the finding is to be read in connection with it. So read, we think there is no necessary conflict, and that the true interpretation of the finding accords with the evidence.

All that the trial judge intends to say is that the earthen drain was built of proper material and properly constructed for that kind of a drain, and that the accident occurred either through the fact that the drain was not properly covered and protected, or that iron pipe was not used instead of earthen pipe, or perhaps for both of these causes. This criticism might have been avoided by a little more care in the statement of this most important feature of the case; but that the trial court ever intended to find that the earthen drain was of material proper to use in a highway covered merely with gravel or sand for about one foot and subject to vehicular travel of weight up to 25,000 pounds, is disproved by other parts of the finding and by the memorandum of decision.

Exceptions to paragraphs 14 and 15, already recited, we regard as conclusions of law, or conclusions of mixed law and fact, necessarily involved in the principal questions of law in the case, the disposition of which will determine whether these conclusions stand or fall. So that it is immaterial whether these conclusions remain a part of the finding or not; they are a part of the case and must be passed upon.

The exceptions to the finding upon which reasons of appeal are based are not in the form required by § 10, page 268, of Rules of Court, in that the grounds or basis of exception are not stated.

The trial court held that the defect was one inhering

entirely in the original plan of construction, and that the injury to the plaintiff arose out of the defective plan and was not the result of neglect to properly maintain and repair the drain, and that the rule laid down in *Hoyt* v. *Danbury*, 69 Conn. 341, 37 Atl. 1051, governed and compelled a judgment for the defendant.

In their brief counsel for defendant attempt to press an additional defense, contributory negligence. This is rested upon the fact that there was 35 feet of paved way upon which the plaintiff could have traveled, and upon the claim that the State was not obliged to keep the whole width of the highway fit for travel as long as the usual traveled part of the highway was open to travel and reasonably suited to .it.

Undeniably neither the State nor the municipality is under the burden of keeping all parts of a highway open to, and reasonably safe for, travel. In this case the place of accident was less than three feet from the paved portion of the highway and upon the same level with it though slightly sloping toward the gutter. The paved portion of the highway was only $8\frac{1}{2}$ feet westerly of the west track of the trolley-track. An approaching car compelled the plaintiff to turn off the track and to the west. Under these circumstances it could not be held as matter of law that the plaintiff was negligent in turning upon the three feet of unpaved roadway just west of the paved way. Nor, upon the facts stated, could such a conclusion be reasonably reached as a matter of fact.

Another ground upon which the claim of contributory negligence is rested is that the State was not "required to make preparation for the safety or convenience of a load or truck, used in such an extraordinary manner as was done by the plaintiff." This claim is based upon the unusual size of the truck and the bulk and weight of its load. But neither of these was il-

legal nor extraordinary in character, and all was within the prescribed load weight. All argument upon this subject is ended by the finding: "The plaintiff at the time of the injury to his truck was in the exercise of due care, and not in any way negligent."

The real question in the case is that upon which the trial court placed its decision. Did this defect in the highway inhere in the original plan of construction of the highway? The finding by the trial court that the defect was in the plan does not settle the point. The principle of nonliability for error in the adoption of the plan for a municipal improvement is fully established. Cases to which the doctrine is applicable are not numerous. Some cases are mistakenly conceived to fall within the doctrine. Other cases have led to exceptions which have greatly limited the doctrine. Whenever the plan in its execution creates a nuisance, or causes direct injury to another, liability follows for the damage done. *Danbury & Norwalk R. Co.* v. *Norwalk*, 37 Conn. 109; *Buckley* v. *New Bedford*, 155 Mass. 64, 29 N. E. 201; *Seifert* v. *Brooklyn*, 101 N. Y. 136, 4 N. E. 321; 19 R. C. L. p. 1091, § 376. The execution of the plan, or the operation of the improvement in accordance with the plan, are ministerial acts, and if the plan be executed or the improvement be operated with negligence, the municipality will be liable for the resulting damage. *Jones* v. *New Haven*, 34 Conn. 1. If the plan be so designed that it makes, for example, the street or sewer dangerous, the municipality will be liable for the resulting damage. *Collett* v. *New York City*, 51 N. Y. App. Div. 394, 64 N. Y. Supp. 693; 28 Cyc. 1371. If the plan be defective from the beginning, or if its defect originate shortly after the completion of the improvement, and injury be ultimately necessarily the inevitable or probable result, the municipality will be liable. Clearly this

is just. Upon this assumption the city created the defective improvement and either knew of it or was chargeable with knowledge of it. Every moment of its continuance was an act of negligence by the municipality. The injury grew out of and was attributable to this negligent continuance and not to the plan so defectively conceived of, but to the operation of the plan after its defective condition was known or ought, in the exercise of reasonable diligence, to have been known to the municipality. As soon as the fault of the construction is known, or ought to be known by the municipality, it is in duty bound to remedy the defect if this can be done, or if not, to cease the operation of this public agency until the defect is remedied; the penalty of refusal after reasonable notice will be the liability in damages for the injuries caused by the defect. *Dayton* v. *Taylor*, 62 Ohio St. 11, 16, 56 N. E. 480; *Ward* v. *Salt Lake City*, 46 Utah, 616, 151 Pac. 905; *Beebe* v. *Scott's Bluff County*, 92 Neb. 504, 510, 138 N. W. 737; *Collett* v. *New York City*, 51 N. Y. App Div. 394, 64 N. Y. Supp. 393; *Teager* v. *Flemingsburg*, 109 Ky. 746, 60 S. W. 718; *Gould* v. *Topeka*, 32 Kan. 485, 4 Pac. 822; 4 Dillon on Municipal Corporations (5th Ed.) § 1746. The circumstances surrounding the defect must be such as to charge the public authorities with notice of it. *Stoddard* v. *Winchester*, 154 Mass. 149, 151, 27 N. E. 1014; Dillon on Municipal Corporations (5th Ed.) § 1746. In *Conlon* v. *St. Paul*, 70 Minn. 216, 218, 72 N. W. 1073, the Supreme Court of Minnesota said: "But, if there is such gross error of judgment as to show that in fact the city authorities never exercised an intelligent judgment at all, the city may be liable for constructing or maintaining the improvement on the defective plan or scheme adopted." Other authorities speak similarly.

We cannot agree with the doctrine which makes the

grossness of the error of judgment of the municipality the basis of liability. The court should not attempt to control the decision of the municipal authorities in their choice of a plan of public improvement. It should not penalize an error of judgment. It should not assess damages for an injury suffered because of the defective plan adopted. But it should hold the municipality liable for the continued operation and maintenance of the improvement under the defective plan after it had reasonable notice of the defect and of the imminence of the injury.

The finding is that the drain was nor properly protected, due to the covering of the roadway above it. The memorandum of decision attributes this defect in the highway either to the covering above the drain, or to the character of the pipe, or both. Obviously from the time the drain was laid it constituted a defect in the highway, whether this was due to the want of adequate covering, or to the character of the pipe, or both. *Hoyt* v. *Danbury*, 69 Conn. 341, 37 Atl. 1051, expressly recognizes at page 352 this situation as creating an exception to the general rule of nonliability for error of judgment in a plan of municipal improvement: "If, indeed, a defect in the plan of construction should be so great as soon to require repairs in order to make the highway safe for travel, a neglect to make these repairs might found an action; but the plaintiff's case would be no stronger than if the road had been originally built in the best manner. So, were the plan of construction adopted one which was totally inadmissible, as, for instance, if the sidewalk in question in the case at bar had been left with its grade broken simply by a four foot wall, without the provision of steps, or had the steps provided been insecure, or unguarded by a proper railing, the highway would have been in such a defective condition as

to have been out of repair from the beginning." The trial court inadvertently failed to note the applicability of this exception to the case in hand.

The trial court has found that "the highway commissioner, his servants and agents, knew the manner of the construction of the highway and the materials used in the construction of the drain pipes at the place in question, and maps, plans and specifications showing same were in the possession of the highway commissioner, his agents and servants, on and before the time of the accident." The highway commissioner thus had ample notice of the existence of the drain, its character and the covering above it. His continuance of the drain so made and so covered was his continuance of the defective highway after notice. The trunk-line statute (§ 1515) provides that "any person injured in person or property through the neglect or default of the state or of any of its employees by means of a defective road," etc., may recover. The plaintiff's case falls squarely under this provision.

One other subject should be adverted to. We do not share the plaintiff's view that the trunk-line statute (Chapter 76, Revision 1918) affords a right of recovery upon a different basis from the statute imposing liability against towns for damages from defective highways (Revision 1918, § 1414). We think the legislative intent was to impose upon the highway commissioner, as the representative of the State, the same burden theretofore laid upon the towns as respects these highways, and that the limitations upon municipal liability apply equally to State liability.

There is error, the judgment is set aside and a new trial ordered.

In this opinion the other judges concurred.